Keith Edward TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–83–01377–CR.

Court of Appeals of Texas, Dallas.

March 28, 1985.

Rehearing Denied April 15, 1985.

Edgar A. Mason, Dallas, for appellant.

Constance M. Mayer, Asst. Dist. Atty., Dallas County, Dallas, for appellee.

Before AKIN, MALONEY and McCLUNG, JJ.

McCLUNG, Justice.

Appellant, Keith Edward Turner, was convicted of rape, a second-degree felony. Punishment was assessed by the jury at 20 years' confinement in the Texas Department of Corrections and a fine of $10,000. On appeal, appellant contends that a witness' reference to a polygraph machine, the prosecutor's remarks during argument, and the prosecutor's reference to appellant's post-arrest silence require reversal. We agree with appellant that the prosecutor violated appellant's constitutional rights by referring to his post-arrest silence. Consequently, we reverse the trial court's judgment and remand the cause for new trial.

The record in this case shows that the prosecutor's questions on cross-examination asking appellant if he ever told anyone in law enforcement of his alibi prior to the date of trial violated appellant's constitutional rights. The relevant portion of the cross-examination of appellant by the prosecutor, Mr. Phillips, reads as follows:

Q. All right. Now, in any event, when you first went in and talked to Herring, he told you the date, December the 6th was the date that this allegedly happened; right?

A. He said, yeah.

Q. All right. And you didn't tell him at that time, wait a minute, what day of the week was that, did you?

A. I told him I didn't rape nobody.

Q. All right. But you didn't say anything about, wait a minute now, that was a Monday, you didn't check the calendar, or anything like that, and say, wait, that was a Monday, that was a Monday night football game, and I was there watching it. You didn't say anything like that, did you?

A. I told him I didn't rape anybody.

Q. I am asking you if you at any time, that day or any day after that—

MR. HUDSON: I object, Your Honor. I think counsel is trying to badger the witness.

THE COURT: Overruled.

MR. PHILLIPS: After that day, or any day after that day, you—while on bond—told Officer Herring, or any other law enforcement officer, hey, you got the wrong man?

THE WITNESS: I told them—

Q. I was watching a football game that night and there are four people who can alibi me on that?

A. I told him.

Q. Did you?

A. I told him I didn't do that.

Q. That is not what I asked. Now, wait—

THE COURT: Listen to his question.

MR. PHILLIPS: Did you at any time tell Pat Herring or any other law enforcement officer, that you were watching Monday night football over at your Aunt Geraldine's house on December the 6th, he had four people who could alibi you, three other people who could alibi you?

THE WITNESS: I—

Q. Never did that, did you—

THE COURT: Just a minute. Give him a chance to answer, Mr. Phillips. Go ahead.

THE WITNESS: Okay. Maybe when it happened before, four months later how did I—

MR. PHILLIPS: I would ask that he be responsive to my question.

THE COURT: Now, just listen. The question that he is asking you, and he's asked you more than once, is, did you ever tell the police when you were on bond that you were watching a Monday night football game on December 6th, is that the question?

MR. PHILLIPS: Yes, it is.

THE COURT: That is the question he wants answered.

THE WITNESS: Say again.

MR. PHILLIPS: Did you at any time tell anybody in law enforcement that you were the wrong man because you were watching Monday night football on the date that this rape happened and that you had other—three other people who could alibi you?

THE WITNESS: I told him that I didn't rape that lady. I was nervous and I was so scared and I told him exactly what I have said—

THE COURT: Just a minute. You want an instruction?

MR. PHILLIPS: Yes, please, Judge.

THE COURT: I want you to answer the question he asked you, and that is, he has asked you did you ever tell the police that on December the 6th, you were watching Monday night football; that is what he is asking you and would you answer that question, please?

THE WITNESS: I—

MR. PHILLIPS: Yes or no, did you ever do that?

THE WITNESS: I told him that—that I didn't, you know. I didn't tell him that I—I didn't tell him that I was watching Monday night football, so when that came to mind that I was over there that particular night, but I told him, like I said, I told him that I did not rape that lady, and I couldn't figure out what day it was or when they say it all happened and all of that, because it was just a surprise to me.

Q. Listen carefully. The question I am about to ask you calls for a yes or no. Did you—

MR. HUDSON: I believe he has answered that question, Your Honor, a number of times.

THE COURT: Well, I will allow the question to be asked once again. You're overruled.

MR. PHILLIPS: Did you ever tell anyone in law enforcement, that you were watching the Monday night football game on December the 6th, 1982, and, therefore, were not the rapist?

THE WITNESS: I told them I wasn't the rapist, yes, I did tell them that.

MR. PHILLIPS: And may I have the witness instructed again as to that question, Your Honor?

THE COURT: Well, answer the rest of the question.

THE WITNESS: No, I didn't tell him that.

MR. PHILLIPS: All right. So that these people over here, these twelve people, are the first ones in the world to hear about this Monday night football game?

MR. HUDSON: Your Honor, I would object to him bringing the jury into this personally like that.

THE COURT: I will sustain. Ask your next question, Mr. Phillips. Rephrase your question, Mr. Phillips.

MR. HUDSON: Note our exception. I move for a mistrial on that last question.

THE COURT: Overruled.

MR. HUDSON: Note my exception, please.

MR. PHILLIPS: The Monday night football alibi is coming out for the first time today, right?

THE WITNESS: Yes.

Q. And you knew from experience, that there is a Grand Jury in Dallas County, Texas—

MR. HUDSON: Your Honor, I object to that.

THE COURT: Sustained.

■ The prosecutor's first question appeared to inquire if appellant asserted his alibi prior to his arrest. However, with the aid of the trial court in some instances, the prosecutor then asked if appellant told any law enforcement officer of his alibi "while on bond" or "at any time," and if he "ever" told the police that he was watching Monday night football. These questions clearly include the period of time following appellant's arrest in their area of inquiry.

■ Both the United States Supreme Court and the Texas Court of Criminal Appeals have made it clear that a prosecutor's questions as to a defendant's post-arrest silence violate the defendant's constitutional rights guaranteed by U.S. CONST.

amend. V and amend. XIV. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Coleman v. State*, 644 S.W.2d 116 (Tex.Crim.App.1982); *Cuellar v. State*, 613 S.W.2d 494 (Tex.Crim.App.1981). The rationale for finding such a violation is that post-arrest silence is insolubly ambiguous because of the State's duty to administer the warnings mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Doyle*, 426 U.S. at 617, 96 S.Ct. at 2244. Due to the assurance implicit in those warnings that silence will carry no penalty, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle*, 426 U.S. at 618, 96 S.Ct. at 2245.

■ The State argues that appellant's objections to the prosecutor's questions were insufficient. From the vantage of hindsight it is apparent that the objections could have been more artfully worded. However, we are mindful of the fact that defense counsel must balance the danger of reinforcing the harmful effect of the improper evidence on the jury by making a very explicit objection, against the danger of not preserving the error for review. We conclude that appellant's objections were sufficient to put the prosecutor and trial judge on notice that the line of questions infringed on the appellant's post-arrest right to remain silent. *See Coleman*, 644 S.W.2d at 119. Appellant's second ground of error is sustained.

Because we have sustained appellant's second ground of error, we need not address the other grounds of error he asserts.

The judgment of the trial court is reversed and the cause is remanded.